UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

TODD HART,

                Plaintiff,                                Case No.  1:15-CV-0185

v.

                                                  HON. PAUL L. MALONEY

COMMISSIONER OF SOCIAL
SECURITY,

                Defendant,

_____/

## OPINION

       This is a social security action brought under 42 U.S.C. § 405(g) seeking judicial review of a final decision of the Commissioner of the Social Security Administration (Commissioner).  Plaintiff Todd Hart seeks review of the Commissioner's decision denying his claim for disability insurance benefits (DIB) and supplemental security income (SSI) under Titles II and XVI of the Social Security Act.

### STANDARD OF REVIEW

       The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal standards in making her decision and whether there exists in the record substantial evidence supporting that decision.  *See Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989).  The Court may not conduct a *de novo* review of the case, resolve evidentiary conflicts, or decide questions of credibility.  *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).  It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and her findings are conclusive provided they

are supported by substantial evidence.  *See* 42 U.S.C. § 405(g).

Substantial evidence is more than a scintilla, but less than a preponderance.  *See Cohen v. Sec'y of Health & Human Servs.*, 964 F.2d 524, 528 (6th Cir. 1992) (citations omitted). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993).  In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever in the record fairly detracts from its weight. *See Richardson v. Sec'y of Health & Human Servs.*, 735 F.2d 962, 963 (6th Cir. 1984).  The substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial interference.  *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted).  This standard affords to the administrative decision maker considerable latitude, and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision.  *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

## PROCEDURAL POSTURE

Plaintiff was forty-two years of age on the date of the Administrative Law Judge's (ALJ) decision.  (PageID.39, 203.)  He obtained a GED, and was previously employed as an electrician, maintenance technician, truck driver, and material handler.  (PageID.72, 86.)  Plaintiff applied for benefits on April 17, 2012, alleging that he had been disabled since December 20, 2009, due to anxiety attacks, bipolar disorder, herniated discs in his neck and back, depression, sleep apnea, and pain.  (PageID.149–61, 208.)  Plaintiff's applications were denied on August 16, 2012, after which time he requested a hearing before an ALJ.  (PageID.97–109.)  On August 20, 2013, Plaintiff

2

appeared with his counsel before ALJ Joel Fina for an administrative hearing with testimony being offered by Plaintiff, a medical expert, and a vocational expert (VE).  (PageID.58–92.)  In a written decision dated August 28, 2013, the ALJ determined that Plaintiff was not disabled.  (PageID.39–57.)  On December 24, 2014, the Appeals Council declined to review the ALJ's decision, making it the Commissioner's final decision in the matter.  (PageID.28–32.)  Plaintiff subsequently initiated this action under 42 U.S.C. § 405(g).

## ALJ'S DECISION

The social security regulations articulate a five-step sequential process for evaluating disability.  *See* 20 C.F.R. §§ 404.1520(a-f), 416.920(a-f).[1]  If the Commissioner can make a dispositive finding at any point in the review, no further finding is required.  *See* 20 C.F.R. §§ 404.1520(a), 416.920(a).  The regulations also provide that if a claimant suffers from a nonexertional impairment as well as an exertional impairment, both are considered in determining the claimant's residual functional capacity (RFC).  *See* 20 C.F.R. §§ 404.1545, 416.945.

Plaintiff has the burden of proving the existence and severity of limitations caused

---

[1] 1.   An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. §§ 404.1520(b), 416.920(b));

2.   An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. §§ 404.1520(c), 416.920(c));

3.   If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors (20 C.F.R. §§ 404.1520(d), 416.920(d));

4.   If an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. §§ 404.1520(e), 416.920(e));

5.   If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. §§ 404.1520(f), 416.920(f)).

by his impairments and that he is precluded from performing past relevant work through step four.
*Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003).   At step five, it is the Commissioner's burden "to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile."  *Id.*

ALJ Fina determined Plaintiff's claim failed at the fifth step of the evaluation.  At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since his alleged disability onset date.  (PageID.44.)  At step two, the ALJ determined Plaintiff had the following severe impairments: (1) extreme morbid obesity; (2) degenerative disc disease at L5-S1; (3) degenerative disc disease of the cervical spine; and (4) adjustment disorder with mixed anxiety and depressed mood.  (PageID.44.)  At the third step, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments.  (PageID.45–46.)  At the fourth step, the ALJ found that Plaintiff retained the RFC based on all the impairments:

> to lift up to twenty pounds occasionally and ten pounds frequently, stand or walk for up to two hours a day[] for up to thirty minutes at a time and sit for up to six hours per day for up to two hours at a time, with normal breaks.  Claimant is able to perform work with not more than occasional balancing, stooping, crouching, kneeling, crawling, and climbing of ramps/stairs.  Claimant's work can involve no climbing of ladders, ropes, or scaffolds.  Claimant must avoid concentrated exposure to vibration, or all exposure to unprotected heights.  Claimant's work is limited to simple, routine, and repetitive tasks, with only occasional interaction with the public and co-workers.

(PageID.47.)  Continuing with the fourth step, the ALJ determined that Plaintiff was unable to perform any of his past relevant work.  (PageID.53.)

At the fifth step, the ALJ questioned the VE to determine whether a significant

number of jobs exist in the economy which Plaintiff could perform given his limitations. *See Richardson*, 735 F.2d at 964. The VE testified that there existed approximately 4,800 jobs in the state of Michigan in the positions of sorter, inspector, and assembler that an individual similar to Plaintiff could perform. (PageID.87–88.) This represents a significant number of jobs. *See Hall v. Bowen*, 837 F.2d 272, 274 (6th Cir. 1988); *McCormick v. Sec'y of Health & Human Servs.*, 861 F.2d 998, 1000 (6th Cir. 1988).

Accordingly, the ALJ concluded that Plaintiff was not disabled at any point from December 20, 2009, (the alleged onset date), through August 28, 2013, (the date of the decision). (PageID.54.)

## DISCUSSION

### 1.    The ALJ's Step Two Determination.

At the second step in the sequential evaluation, the ALJ found that Plaintiff suffered from the severe mental impairment of adjustment disorder with mixed anxiety and depressed mood. (PageID.44–45.) In doing so, it appears the ALJ credited the opinion of David R Cashbaugh Jr., a limited licensed psychologist and agency consultant, as well as Dr. Kenneth Parada's impression that Plaintiff had an "adjustment disorder with mixed emotions of anxiety and depression, personality disorder along with cluster B traits." (PageID.304–305, 333.) Plaintiff argues, however, that the ALJ should have also found that his bipolar disorder was a severe mental impairment. (PageID.448–449.)

Plaintiff points to a two page discharge note from Alpena General Hospital completed on August 25, 2011. While the handwritten note is admittedly difficult to read, the note is clear enough to see that Plaintiff was admitted to the hospital for eighteen days due to anxiety disorder,

5

bipolar disorder, and suicidal ideations.   (PageID.389–90.)   The record also contains several references to this hospitalization, including Plaintiff's testimony at the administrative hearing. (PageID.83, 275, 343, 356.)

A severe impairment is defined as "any impairment or combination of impairments which significantly limits your physical or mental ability to do basic work activities," 20 C.F.R. §§ 404.1520(c), 416.920(c), and which lasts or can be expected to last "for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Basic work activities include: (1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers and usual work situations; and (6) dealing with changes in a routine work setting. 20 C.F.R. §§ 404.1521(b), 416.921(b); *see also Despins v. Comm'r of Soc. Sec.*, 257 F. App'x 923, 929 n.2 (6th Cir. 2007).

An impairment "can be considered not severe only if it is a slight abnormality that minimally affects work ability regardless of age, education, and experience." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 243 n.2 (6th Cir. 2007) (quoting *Higgs v. Bowen*, 880 F.2d 860, 862 (6th Cir. 1988)); *see also Williamson v. Sec'y of Health & Human Servs.*, 796 F.2d 146, 151 (6th Cir. 1986) (an impairment is less than severe only if it is a "slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education and work experience").

Step two of the sequential disability process is considered a "de minimus hurdle" designed to subject to dismissal only those claims which are "totally groundless" from a medical

standpoint. *Rogers*, 486 F.3d at 243 n.2; *Higgs*, 880 F.2d at 860; *Despins*, 257 F. App'x at 929. As the Sixth Circuit has recognized, "this lenient interpretation of the severity requirement in part represents the courts' response to the Secretary's questionable practice in the early 1980s of using the step two regulation to deny meritorious claims without proper vocational analysis." *Long v. Apfel*, 1 F. App'x 326, 331 (6th Cir. 2001) (quoting *Higgs*, 880 F.2d at 862).

The Court concludes that the harmless error standard articulated in *Maziarz v. Sec'y of Health & Human Servs.*, 837 F.2d 240 (6th Cir.1987), is inapplicable in this circumstance. At step two of the sequential disability analysis articulated above, the ALJ must determine whether the claimant suffers from a severe impairment. In *Maziarz*, the court held that where the ALJ finds the presence of a severe impairment at step two and proceeds to continue through the remaining steps of the analysis, the alleged failure to identify as severe some other impairment constitutes harmless error so long as the ALJ considered the entire medical record in rendering his decision. *Id.* at 244; *see also Kirkland v. Comm'r of Soc. Sec.*, 528 F. App'x 425, 427 (6th Cir. 2013) ("so long as the ALJ considers all the individual's impairments, the failure to find additional severe impairments . . . does not constitute reversible error"). Here it is clear the ALJ failed to consider the entire record, namely a discharge note which included a diagnosis of bipolar disorder. Accordingly, the record does not reflect that the ALJ considered the limitations and restrictions imposed by all of Plaintiff's impairments. The ALJ's error here, therefore, is not harmless. *See Mish v. Comm'r of Soc. Sec.*, No. 1:09-cv-753, 2011 WL 836750 at *1–2 (W.D. Mich., Mar. 4, 2011). This failure likewise leads to the conclusion that the ALJ's RFC determination is not supported by substantial evidence. The Commissioner's attempt to argue Plaintiff does not meet the DSM's definition of bipolar disorder is not persuasive; such involves a determination this Court is not competent to make.

(PageID.463–465).

        **2.**       **The ALJ's Step 3 Determination.**

        Plaintiff next argues the ALJ's failure to consider the August 25, 2011, discharge note renders the ALJ's step three determination that he did not meet or equal the requirements of Listing 12.04 unsupported by substantial evidence. Specifically, he contends that the ALJ's determination that he did not suffer from repeated episodes of decompensation, each of extended duration, is unsupported by substantial evidence. The Court finds no reversible error here.

        The "Listing of Impairments" is set forth at 20 C.F.R. § 404, Subpt. P, Appendix 1. It "describes, for each of the major body systems, impairments which are considered severe enough to prevent a person from doing any gainful activity." 20 C.F.R. §§ 404.1525, 416.925. The medical criteria for a listing, i.e., the inability to perform "gainful activity," presents a higher level of severity from the statutory standard, i.e., the inability to perform "substantial gainful activity." *Sullivan v. Zebley*, 493 U.S. 521, 532 (1990). "The reason for this difference between the listings' level of severity and the statutory standard is that, for adults, the listings were designed to operate as a presumption of disability that makes further inquiry unnecessary." *Id.*

        A claimant bears the burden of demonstrating that he meets or equals a listed impairment at the third step of the sequential evaluation. *Evans v. Sec'y of Health & Human Servs.*, 820 F.2d 161, 164 (6th Cir. 1987). In order to be considered disabled under the Listing of Impairments, "a claimant must establish that [his] condition either is permanent, is expected to result in death, or is expected to last at least 12 months, as well as show that [his] condition meets or equals one of the listed impairments." *Id.* An impairment satisfies the listing only when it manifests the specific findings described in the medical criteria for that particular impairment. 20 C.F.R. §§

404.1525(d), 416.925(d).   A claimant does not satisfy a particular listing unless all of the requirements of the listing are present.  *Hale v. Sec'y of Health & Human Servs.*, 816 F.2d 1078, 1083 (6th Cir. 1987); *King v. Heckler*, 742 F.2d 968, 973 (6th Cir. 1984); *see, e.g.*, *Thacker v. Soc. Sec. Admin.*, 93 F. App'x 725, 728 (6th Cir. 2004) ("[w]hen a claimant alleges that he meets or equals a listed impairment, he must present specific medical findings that satisfy the various tests listed in the description of the applicable impairment or present medical evidence which describes how the impairment has such equivalency").  If a claimant successfully carries this burden, the Commissioner will find the claimant disabled without considering the claimant's age, education and work experience.  20 C.F.R. §§ 404.1520(d), 416.920(d).

Listings for mental impairments generally begin with "paragraph A" criteria which is "a set of medical findings."  20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00.  Paragraph A is followed by paragraph B, which contains a "set of impairment-related functional limitations." *Id.*  Specifically, to satisfy paragraph B, a claimant must demonstrate his limitations result in two of the following:

1.  Marked restriction of activities of daily living; or

2.  Marked difficulties in maintaining social functioning; or

3.  Marked difficulties in maintaining concentration, persistence, or pace; or

4.  Repeated episodes of decompensation, each of extended duration.

*Id.* at § 12:00(C).  The regulations further define episodes of decompensation as "exacerbations or temporary increases in symptoms or signs accompanied by a loss of adaptive functioning."  They "may be inferred from medical records showing significant alteration in medication; or documentation of the need for a more structure psychological support system (e.g., hospitalizations, placement in a halfway house, or a highly structure and directing household); or other relevant

information in the record about the existence, severity, and duration of the episode." *Id.* Repeated episodes of decompensation, each of extended duration, are defined as "three episodes within 1 year, or an average of once every 4 months, each lasting for at least 2 weeks." *Id.*

Listing 12.04 also contains paragraph C criteria, which are additional functional criteria. It requires "medically documented history of a chronic affective disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities, with symptoms or signs currently attenuated by medication or psychosocial support, and one of the following:

1.   Repeated episodes of decompensation, each of extended duration; or

2.   A residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate; or

3.   Current history of 1 or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement.

*Id.* at § 12.04(C).

"The requirements in paragraphs B and C describe impairment-related functional limitations that are incompatible with the ability to do any gainful activity." *Id.* at § 12.00.  Listing 12.04 is met "when the requirements in both [paragraphs] A and B are satisfied, or when the requirements in C are satisfied." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.04.  Plaintiff contests the ALJ's paragraph B and C finding, claiming that the ALJ's erroneous conclusion that Plaintiff had no psychiatric hospitalizations renders his determination unsupported by substantial evidence.

The Sixth Circuit has found a harmless error standard applies when a plaintiff fails to demonstrate his impairments meet or medically equal in severity any listed impairment. *Forrest v. Comm'r of Soc. Sec.*, 591 F. App'x 359, 366 (6th Cir. 2014).  Here, Plaintiff does not argue he

meets the requirements of paragraph B or C.  Indeed, he does not contest the ALJ's determination that he had only mild restriction in activities of daily living, mild difficulties in social functioning, and moderate difficulties in concentration, persistence or pace.  (PageID.45–46.)  Thus, assuming arguendo, Plaintiff's argument is correct, he has not demonstrated he satisfies the requirements of paragraph B that requires meeting the severity requirements of two of the four criteria.  In his reply brief, Plaintiff speculates that had the ALJ properly considered the discharge records, the ALJ's determination regarding the other three criteria "might also have been different."  (PageID.483.) This is not enough to demonstrate reversible error.

Similarly, Plaintiff does not argue his hospital stay satisfies the paragraph C criteria, but rather claims the ALJ failure to consider his hospital stay renders the equivalence finding unsupported by substantial evidence.  (PageID.450.)  Again, any error here is harmless as Plaintiff has failed to provide any argument or medical findings regarding equivalence.   "To demonstrate [equivalence], the claimant must present medical findings equal in severity to all the criteria for the one most similar listed impairment." *Bailey v. Comm'r of Soc. Sec.*, 413 F. App'x 853, 854 (6th Cir. 2011) (citing *Sullivan v. Zebley*, 493 U.S. 521, 531(1990) (emphasis in original)); *Thacker*, 93 F. App'x at 728 ("When a claimant alleges that he meets or equals a listed impairment, he must present specific medical findings that satisfy the various tests listed in the description of the applicable impairment or present medical evidence which describes how the impairment has such equivalency.") (citing *Evans*, 820 F.2d at 164).

Accordingly, this claim is denied.

### 3.    The ALJ's Evaluation of The Medical Opinion Evidence.

Finally, Plaintiff argues the ALJ erred in discounting the opinion of his nurse

practitioner, Mr. Derek Burt.  The Court disagrees.

On July 25, 2012, Mr. Burt filled out a mental RFC assessment of Plaintiff's limitations. (PageID.324–26.) Mr. Burt assessed Plaintiff's limitations in twenty different categories encompassing the areas of understanding and memory, sustained concentration and persistence, social interaction, and adaptation.  (PageID.324–325.)  Among other things, Mr. Burt believed Plaintiff was markedly limited in his ability to remember locations and work-like procedures. (PageID.324.)  Plaintiff was further markedly limited in his ability to maintain attention and concentration for extended periods, maintain regular attendance, be punctual, sustain an ordinary routine without special supervision, and make simple work-related decisions.  (PageID.324.) Ultimately Mr. Burt opined that "I do not see [Plaintiff] as being able to sustain any regular employment at this time."  (PageID.326.)

The ALJ gave the opinion "little weight" noting that the opinion is not from an acceptable medical source, was excessive when compared against other mental status examinations in the record, and that the Plaintiff and Mr. Burt did not have an extensive relationship.  (PageID.52.) Plaintiff argues the ALJ's determination in this matter is unsupported by substantial evidence.

Here, Mr. Burt, a nurse practitioner, is not considered either a "treating source" or an "acceptable medical source." *See* 20 C.F.R. §§ 404.1502, 416.902 (defining an "acceptable medical source" as a source described in 20 C.F.R. §§ 404.1513(a), 416.913(a), who provides evidence about your impairments, i.e., licensed physicians, licensed or certified psychologists, licensed optometrists, licensed podiatrists, and qualified speech-language pathologists).  Rather, as a nurse practitioner, Mr. Burt is considered to be an "other" medical source. *See* 20 C.F.R. §§ 404.1502, 416.902 ("medical sources" include other health care providers who are not acceptable medical sources);

404.1513(d)(1), 416.913(d)(1) (nurse practitioners, physicians' assistants, naturopaths, chiropractors, audiologists, and therapists).

In SSR 06–03p, the agency explained the need to differentiate between the opinions given by an acceptable medical source and other health care providers:

> The distinction between "acceptable medical sources" and other health care providers who are not "acceptable medical sources" is necessary for three reasons. First, we need evidence from "acceptable medical sources" to establish the existence of a medically determinable impairment. *See* 20 CFR 404.1513(a) and 416.913(a). Second, only "acceptable medical sources" can give us medical opinions. *See* 20 CFR 404.1527(a)(2) and 416.927(a)(2). Third, only "acceptable medical sources" can be considered treating sources, as defined in 20 CFR 404.1502 and 416.902, whose medical opinions may be entitled to controlling weight. *See* 20 CFR 404.1527(d) and 416.927(d).

SSR 06–03p.  Because Mr. Burt is not an acceptable medical source, the ALJ was not required to provide good reasons for the weight given to his opinions under §§ 404.1527(d)(2), 416.927(d)(2). *See Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 876 (6th Cir. 2007).  Nevertheless, SSR 06–03p provides that the Commissioner should evaluate the opinions expressed by other medical sources on "key issues":

> These regulations provide specific criteria for evaluating medical opinions from "acceptable medical sources"; however, they do not explicitly address how to consider relevant opinions and other evidence from "other sources" listed in 20 CFR 404.1513(d) and 416.913(d). With the growth of managed health care in recent years and the emphasis on containing medical costs, medical sources who are not "acceptable medical sources," such as nurse practitioners, physician assistants, and licensed clinical social workers, have increasingly assumed a greater percentage of the treatment and evaluation functions previously handled primarily by physicians and psychologists. Opinions from these medical sources, who are not technically deemed "acceptable medical sources" under our rules, are important and should be evaluated on key issues such as impairment severity and functional effects, along with the other relevant evidence

13

in the file.

SSR 06–03p.

Here, the ALJ evaluated Mr. Burt's opinions as required by SSR 06–03p. The ALJ provided a reasonable explanation for the weight assigned to his opinion, pointing out especially that it was inconsistent with the other evidence of record, and that because Mr. Burt was a nurse practitioner, and not an acceptable medical source, his opinion was less persuasive. (PageID.52.) While the ALJ's explanation is not as exhaustive as Plaintiff might desire, it was sufficient.

This claim of error is accordingly rejected.

**4.    Remand is Appropriate.**

While the Court finds that the ALJ's decision fails to comply with the relevant legal standards, Plaintiff can be awarded benefits only if "all essential factual issues have been resolved" and "the record adequately establishes [his] entitlement to benefits." *Faucher v. Sec'y of Health & Human Servs.*, 17 F.3d 171, 176 (6th Cir. 1994); *see also Brooks v. Comm'r of Soc. Sec.*, 531 F. App'x 636, 644 (6th Cir. 2013). This latter requirement is satisfied "where the proof of disability is overwhelming or where proof of disability is strong and evidence to the contrary is lacking." *Faucher*, 17 F.3d at 176; *see also Brooks*, 531 F. App'x at 644.

Evaluation of Plaintiff's claim requires the resolution of certain factual disputes which this Court is neither competent nor authorized to undertake in the first instance. Moreover, there does not exist compelling evidence that Plaintiff is disabled. Accordingly, this matter must be remanded for further factual findings, including but not necessarily limited to, an accurate assessment of the severe impairments from which Plaintiff suffers and an assessment of his residual functional capacity.

**CONCLUSION**

For the reasons set forth herein, the Commissioner's decision will be **REVERSED** and **REMANDED** under sentence four of 42 U.S.C. § 405(g).  This matter is remanded for further factual findings, including but not necessarily limited to, the ALJ's severe impairment and RFC determinations.

A separate judgment shall issue.



Dated:  November 30, 2016                              /s/ Paul L. Maloney
                                                       PAUL L. MALONEY
                                                       United States District Judge